# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40358
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
April 11, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

BYRION DEMECO FERGUSON,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:15-CR-129-13

Before BENAVIDES, CLEMENT, and, GRAVES, Circuit Judges.

PER CURIAM:*

Byrion Demeco Ferguson appeals his conviction and sentence for conspiracy to manufacture, distribute, or possess with the intent to manufacture or distribute 280 grams or more of a mixture or substance containing cocaine base (crack) in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. The district court sentenced him within the guidelines range to 168 months of imprisonment. Ferguson argues that the district court clearly erred

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

in denying him a mitigating role reduction under U.S.S.G. § 3B1.2, and that there was insufficient evidence for the jury to find that he was responsible for 280 grams or more of crack cocaine.

*Denial of § 3B1.2 Adjustment*

Whether a defendant was a minor or minimal participant is a factual question that we review for clear error. *United States v. Gomez-Valle*, 828 F.3d 324, 328 (5th Cir. 2016). The evidence at trial established that Ferguson conspired with several codefendants to sell crack cocaine on a daily basis over the course of a two-year period. Although his codefendant, Quashay Coleman, was the ostensible leader of the conspiracy and Ferguson took his direction from her, that, in and of itself, does not provide a basis for § 3B1.2 mitigating role adjustment. *See United States v. Gomez-Valle*, 828 F.3d 324, 331 (5th Cir. 2016). Indeed, despite the fact that there were several other members of the conspiracy other than Ferguson and Coleman, Ferguson makes no effort to satisfy his burden of establishing the culpability of an average participant and that he was substantially less culpable than the average participant. *See United States v. Castro*, 843 F.3d 608, 613 (5th Cir. 2016).

The record establishes that Ferguson's role in the conspiracy was more than just peripheral. *See Castro*, 843 F.3d at 613. Accordingly, the district court's finding that Ferguson was not substantially less culpable than the average participant was plausible in light of the record as a whole. § 3B1.2, comment. (n.3(A)); *see United States v. Torres-Hernandez*, 843 F.3d 203, 207 (5th Cir. 2016).

*Sufficiency of the Evidence*

Because Ferguson preserved the sufficiency issue at trial, our review is de novo. *United States v. Davis*, 735 F.3d 194, 198 (5th Cir. 2013). In its verdict, the jury found Ferguson guilty of conspiracy and made a separate

finding that the quantity of crack cocaine that he was "accountable" for was 280 grams or more.  Ferguson argues that the evidence was insufficient for a rational jury "to find, beyond a reasonable doubt, that Ferguson was accountable for 280 grams" or more of crack cocaine.

"[A] defendant who participates in a drug conspiracy is accountable for the quantity of drugs, which is attributable to the conspiracy and reasonably foreseeable to him." *United States v. Haines*, 803 F.3d 713, 740 (5th Cir. 2015) (internal quotation marks and citation omitted).  The amount of drugs reasonably foreseeable to the defendant includes "the amount which [the] defendant knew or should have known was involved in the conspiracy."  *Id.* (internal quotation marks and citation omitted).

The Government presented evidence that Ferguson lived with Coleman in her house and they, together, sold crack cocaine for at least one year.  The Government also presented evidence that Ferguson moved out of Coleman's house and moved into a nearby stash house where he sold crack cocaine— supplied by Coleman—seven days a week for another year.  Thus, the evidence established that Ferguson was involved in the conspiracy for at least two years.

Furthermore, Coleman testified that her supplier sold her crack cocaine for resale during the approximate two-year period that Ferguson was involved in the conspiracy.  She testified that she purchased one-and-a-half to two ounces from her supplier at a frequency of once to twice per week.  Ferguson often accompanied Coleman on her trips to purchase crack cocaine from her supplier.  Coleman, together with Ferguson, would cut up the crack cocaine purchased from the supplier into smaller quantities, bag it, and sell the small quantities.  Given that one ounce is equivalent to approximately 28 grams, even assuming that Coleman only purchased one ounce from her supplier once a week—a conservative estimate based on the Government's evidence—the

No. 17-40358

evidence established that Coleman purchased, at a minimum, 1,456 grams of crack cocaine per year or 2,912 over a two year period. Even if the Government did not present evidence that Ferguson had direct knowledge of every sale of crack cocaine from Nelson to Coleman over the two-year span that he was involved in the conspiracy, the evidence, viewed in the light most favorable to the prosecution, was sufficient to allow a rational jury to reasonably infer that, at a minimum, Ferguson should have known that 280 grams or more of crack cocaine was involved in the conspiracy. *See Haines*, 803 F.3d at 740; *United States v. Lopez-Moreno*, 420 F.3d 420, 437-438 (5th Cir. 2005); *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir. 1989).

AFFIRMED.